## JACOB G. DAY *vs.* JAMES D. GREEN & another.

Where a by-law of a city prohibits the moving of buildings through the public streets, without a license granted by the mayor and aldermen, the board of aldermen cannot delegate to the mayor alone the power to grant such licenses.

The mayor of a city, who, under the authority of an order of the board of aldermen, which they had no power to pass, has granted a license for the moving of a building through the streets, is not estopped, in an action of trespass against him, for removing the building out of the street, where it has been left by the owner in the course of such removal, to set up the invalidity of the license.

THIS was an action of trespass, for taking and carrying away certain articles of personal property consisting principally of a building then standing on wheels, and certain implements and machinery commonly used in the removal of buildings.

The defendants severally pleaded the general issue, and as special matter of defence alleged, that the plaintiff left the building, and other articles mentioned in his writ, in a highway in Cambridge, known as Harvard street, whereby the street was incumbered and rendered unsafe for travellers, and that the defendant Green, as mayor of the city and chairman of the board of highway surveyors, and the other defendant, Coolidge, as superintendent of streets, removed the building from the street, as they had a right to do.

The case was tried before *Fletcher*, J., from whose report, it appeared to be as follows : —

It was admitted that Green was mayor and chairman of the board of highway surveyors, and Coolidge superintendent of streets, at the time of the alleged trespass, as stated in the specification of defence.

It appeared that one Flanagan bought the building in question in January, 1848, and contracted with the plaintiff to move it from where it stood, near Harvard street, to a lot of land near the Observatory.

By the sixteenth section of the act of 1846, *c.* 109, " to establish the city of Cambridge," the city council is authorized " to make all such salutary and needful by-laws, as towns, by the laws of the commonwealth, have power to make, and to annex penalties, not exceeding twenty dollars, for the breach thereof."

In pursuance of this provision, the city council of Cambridge made an ordinance, for the appointment of a superintendent of streets, with the usual functions of such officer, in the care and oversight of the public streets. The city council also passed a by-law " to prevent unlawful and injurious practices in the streets and other public places in the city," prohibiting, among other things, the removal of buildings in the streets, except by a license for that purpose, granted by the mayor and aldermen.

On the 10th of May, 1847, it was ordered, in the board of aldermen, that the mayor be authorized to grant licenses for the removal of buildings over the public highways, and for the obstruction of sidewalks, in all cases in·which he may

Day *v.* Green & another.

deem it expedient, under the regulations and upon the con-
ditions prescribed by the city ordinance above mentioned.

The plaintiff procured a license in writing, dated January
28th, 1848, and signed by the defendant Green, as mayor, of
which the following is a copy : —

" Pursuant to an order of the board of aldermen, license is hereby granted
to Jacob G. Day to remove one building twenty by sixteen feet in dimensions,
and another about twelve by fifteen feet, from the lot on which they now
stand on Harvard street, through said Harvard and Main streets, Harvard
square, Washington street and Concord avenue, to a lot on said avenue a little
west of the Observatory ; and if either of said buildings should of necessity
remain on the street over night, a clear passage of at least fifteen feet in width
shall be left for the public travel, and two lights kept burning; he, the said
Day, being required to conform to the provisions of the ' ordinance to prevent
unlawful and injurious practices in the streets and other public places in
the city.' "

The plaintiff took down the chimneys of the house, and
after separating the two-story part from the one-story part,
moved the former to the side of Harvard street; and after-
wards, at an early hour on Saturday, January 29th, moved
the building into the street, placed it on wheels which he
had hired for the purpose, and attempted to move it up Har-
vard street, towards the lot on which he was to place it ; but
finding, after repeated trials, that he could not do so, owing
to the condition of the streets, the weather being stormy, and
the streets very muddy, he moved the building about two
hundred and fifty feet in the opposite direction, down the
hill to the end of Cross street, and there left it, about one
o'clock in the afternoon of the same day. Harvard street
was fifty feet wide, and much travelled by teams and pleas-
ure carriages.

In the afternoon of Saturday, and after the plaintiff had
left the building, the defendants severally notified the plain-
tiff to remove the building, as an obstruction to the travel ;
the defendant Coolidge acting in all he did in the case under
the orders of the mayor. The defendants, at the same time,
told the plaintiff, that the building could not be permitted to
remain on the street over the Sabbath. on account of the
danger to travellers.

Day *v.* Green & another.

On the evening of the same day, the defendants took pos-session of the building, and moved it a short distance out from the travelled part of the street, and there left it on the wheels. On the following Monday morning, the plaintiff applied to Green for permission to move the building to the lot originally intended for it; but was told that he could have no such permission, unless he would first pay the ex-pense, which had been incurred by the defendants in moving it on Saturday.

The defendants contended, among other things, 1st. That the plaintiff had not shown such a property or possession, especially of the building, as would enable him to maintain this action; 2d. That the city council could not legally authorize the mayor and aldermen to grant a license to in-cumber a highway, in the manner it was done by the plain-tiff; and if they could, 3d, That such authority, having been vested in the mayor and aldermen, by a city ordinance, could not be transferred to the mayor, by an order of the board of aldermen.

But the judge, for the purposes of the trial, overruled these objections, and instructed the jury, that if they were satis-fied, that the plaintiff took and had possession of the build-ing, by virtue and in performance of the contract for moving it as stated, then the plaintiff had such an interest in and possession of the property in question, as would sustain the action; that the license granted by the mayor was valid in law, and authorized the plaintiff to move the building, and thereby to incumber the street, so far as was reasonably necessary for that purpose, and not preventing the public travel; that the plaintiff would be entitled to a reasonable time, under all the circumstances, for moving the building, no time being specified in the license; that there was noth-ing in the license to prohibit the plaintiff from leaving the building on the street over Sunday, and if he had used all reasonable efforts to get it to the lot it was to stand on, on Saturday, and found that impracticable, he would be justified in leaving it over Sunday on the street; and the defendants would have no right, on that account, to take possession of the building and move it away.

The jury returned a verdict for the plaintiff; and the defendants excepted.

*E. Buttrick*, for the defendants.

*A. H. Nelson*, for the plaintiff, cited to the point that the defendants were estopped to set up the invalidity of the license, *Hicks* v. *Cram*, 17 Verm. 449; *Rangely* v. *Spring*, 8 Shep. 130; Story, Ag. § 264.

SHAW, C. J. This is trespass against the mayor of Cambridge and the superintendent of streets, for taking away and removing a building, found incumbering one of the highways of the city. How far it falls within the power of a municipal corporation, with authority to make by-laws for the reasonable regulation of the use of the streets and highways, to authorize their partial incumbrance by the removal of large buildings thereon, with the necessary incidents of occasional detention, and the temporary total obstruction of a highway, it seems to us, it is not necessary to decide in the present case. That it is often useful and convenient that buildings should be so removed is found by experience; it may often be done, with little or no inconvenience to the public, under suitable and proper restrictions, adapted to each particular case; and therefore it seems highly proper that the power to authorize and regulate it should exist somewhere. Perhaps the power vested in municipal corporations to make salutary by-laws, for the regulation of the highways, is sufficient for this purpose. But the right to do what the plaintiff did in the present case, to move a building on the street, so large as effectually to incumber and obstruct it, and, upon an emergency preventing the complete removal in a single day, to leave it on the street for two or more nights, was not claimed as a common law right to the reasonable use of the highways; but the plaintiff placed his demand wholly upon the validity of his license, and his compliance with the terms and conditions on which it was granted.

Supposing, therefore, that the act incorporating the city of Cambridge, (*St.* 1846, *c.* 109, § 16,) authorizing the city council to make all such salutary and needful by-laws, as towns have power to make, extends to reasonable regulations, in

37 *

regard to the use of the highways, we are to consider how the city council have exercised this power.

By virtue of this provision, the city council passed ordinances, making provision for the appointment of a superintendent of streets, charged, as the designation imports, with the care of the public streets; and they further passed a by-law, prohibiting the removal of buildings in the streets, except by a license therefor, to be granted in each particular case by the mayor and aldermen.

The plaintiff relies upon a license granted to him by the mayor to remove the building in question, and insists that the mayor was duly authorized to grant such license by a vote of the mayor and aldermen. The license is produced, and much of the evidence offered at the trial turned upon the question, whether or not the plaintiff had complied with the conditions, on which it was granted.

But the question of law is, whether the mayor alone had authority to grant such license. It appears by the case, that after the passage of the by-law, by the city council, the mayor and aldermen, in May, 1847, passed a vote authorizing the mayor to grant licenses for the removal of buildings, in all cases, in which he might deem it expedient, under the regulations and upon the conditions prescribed by the city ordinance.

The court are of opinion, that the authority thus vested in the board, organized and acting together as an administrative body, could not be delegated by them to a single member, although the constitutional head of such board, to be exercised according to his views of expediency.

By the organization of city governments in this commonwealth, aldermen are elected with a view to their judgment and experience, their knowledge of what is just to the individual, and necessary to public safety and convenience. When, therefore, such a power is granted to the mayor and aldermen, constituted as they are, to act as one deliberative and administrative body, confidence is reposed in their united wisdom and experience, in deciding both upon the fitness of granting a license, dependent on the local position, the

width of the streets, the magnitude of the building, the season of the year, and all similar circumstances, and in prescribing the conditions necessary to the public safety and convenience.

And we think this rule is well sustained by authorities. Where by law, two or more justices are authorized to act, they must act together, for this reason, that they should assist each other, and the result of their conference be the ground of their determination. It is deemed not a ministerial act, but a judicial act, in which they are to exercise discretion. *The King* v. *Forrest*, 3 T. R. 38; *Billings* v. *Prinn*, 2 W. Black. 1017. So where commissioners act upon the propriety of granting a warrant to arrest a witness refusing to come on a summons to be examined. *Battye* v. *Gresley*, 8 East, 319.

When such an authority is vested in a committee, or other body, all must have notice. A majority, unless some other number is made a *quorum* by the act or law under which they are organized, must meet and act together, when the act of a majority is the act of the body, unless otherwise determined by their constitution. *Commonwealth* v. *Ipswich*, 2 Pick. 70; *Damon* v. *Granby*, 2 Pick. 345; *Williams* v. *Lunenburg*, 21 Pick. 75.

But it is contended for the plaintiff, that the defendant Green is estopped from setting up the invalidity of a license granted by himself. But the court are of opinion, that the plaintiff cannot avail himself of such an estoppel *in pais.*

An estoppel is to be construed strictly, and if it could avail at all, as against the mayor, it could not apply to Coolidge, who was a public officer, charged with a public duty, to remove all nuisances in the highways. But a more satisfactory, and we think a legal reason extending as well to Green, the mayor, as to the superintendent of streets, is, that the mayor acting in a public capacity, in the exercise of a public duty, and as trustee for the public, could not estop himself from so acting, by his previous personal and unauthorized act. *Fairtitle* v. *Gilbert*, 2 T. R. 169.

On these grounds, the court are of opinion, that the defendants were not estopped from denying the validity of the

license under which the plaintiff acted. The jury having, for the purposes of the trial, been directed otherwise on these points of law, the verdict must be set aside, and a new trial granted.